## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 91-560-3 (TFH) |
| | ) | |
| ARTUR TCHIBASSA, | ) | **FILED** |
| | ) | |
| Defendant. | ) | AUG 21 2009 |
| | ) | |

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM OPINION

Pending before the Court is defendant Artur Tchibassa's *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.[1]  As explained below, the Court finds no merit in Tchibassa's claims.  Accordingly, a hearing is unnecessary and the Court will deny the motion.

### BACKGROUND

Tchibassa was indicted in 1991 for one count of hostage-taking and one count of conspiracy to commit hostage-taking related to events in his native Angola.  Arrested in 2002 in the Democratic Republic of the Congo, Tchibassa went to trial in September 2003, where a jury found him guilty of both counts in the indictment.  The Court sentenced Tchibassa to concurrent sentences of 60 months for the conspiracy and 293 months for the hostage-taking.

The D.C. Circuit affirmed Tchibassa's conviction on July 7, 2006.  *See United States v. Tchibassa*, 452 F.3d 918 (D.C. Cir. 2006).  Specifically, the Court of Appeals ruled that (1) this

---

[1]  With Tchibassa's permission—but without becoming counsel of record—the Inmate Legal Assistance Project at the Indiana University School of Law-Bloomington filed briefs in support of the motion.  The Court commends the Inmate Legal Assistance Project for its efforts.

1

Court's treatment of the United States Sentencing Guidelines ("Guidelines") as mandatory when sentencing Tchibassa did not prejudice him; (2) the eleven-year delay between Tchibassa's indictment and arrest did not violate his right to a speedy trial; and (3) the alleged errors in this Court's admission of testimony from witness Piotr Dietrich and exclusion of proposed testimony from witness Martins Leitao were harmless and therefore not cognizable. *Id.* at 922-30.

Tchibassa's § 2255 motion largely rehashes these issues, asserting four grounds for relief. First, Tchibassa contends that, notwithstanding the D.C. Circuit's ruling, the Court's treatment of the Guidelines as mandatory must now be deemed a Sixth Amendment violation in light of subsequent Supreme Court decisions elaborating on the post-*Booker* sentencing regime. Second, Tchibassa asserts that his trial counsel gave ineffective assistance by not objecting to treatment of the Guidelines as mandatory during sentencing. Third, Tchibassa argues that his trial and appellate counsels gave ineffective assistance by failing to demonstrate how the eleven-year delay from his indictment to the start of his trial prejudiced him. Finally, Tchibassa again claims that the Court erred in admitting the Dietrich testimony and excluding the Lietao testimony.

## ANALYSIS

Section 2255 allows a defendant to "move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Courts disfavor the use of § 2255 actions to relitigate claims that have already been rejected on appeal. *See United States v. Greene*, 834 F.2d 1067, 1070 (D.C. Cir. 1987). To the extent that

Tchibassa's motion reasserts the same claims raised in his appeal, "mere lack of success on that appeal does not pave the way for collateral attack." *Garris v. Lindsay*, 794 F.2d 722, 727 (D.C. Cir. 1986) (citation omitted). Rather, on any claim that he brought previously for direct review, Tchibassa can justify § 2255 relief only by showing an "intervening change in the law" that warrants a different outcome. *Id.* at 726 ("It is well established in the federal circuits that a federal prisoner cannot raise collaterally any issue litigated and adjudicated on a direct appeal from his conviction, absent an intervening change in the law."). With this background in mind, the Court reviews Tchibassa's four arguments below.

**1. Claim for Treatment of Sentencing Guidelines as Mandatory**

Tchibassa contends that he is entitled to re-sentencing because the Court wrongly sentenced him under the mandatory Guidelines regime that the Supreme Court later deemed unconstitutional in *United States v. Booker*, 543 U.S. 220 (2005).[2] In denying this claim when Tchibassa raised it on direct appeal, the D.C. Circuit relied on its decision in *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005). *Tchibassa*, 452 F.3d at 929-30. Specifically, the Court of Appeals reasoned that, under *Coles*, it was clear that the Court's treatment of the Guidelines as mandatory was (1) an error, that was (2) plain, but Tchibassa still needed to show that (3) the error affected substantial rights. *Id.* at 929. Although in *Coles* the Court of Appeals could not determine whether the judge would have given a different sentence were the Guidelines not mandatory, that determination was possible in Tchibassa's case. *Id.* at 930. This Court had sentenced Tchibassa to the maximum 293 months under the Guidelines and expressed on the

---

[2] *Booker* was decided after this Court had sentenced Tchibassa, but before the D.C. Circuit ruled on his appeal. The Supreme Court directed that its holdings in *Booker* applied to all cases then on direct review. *Booker*, 543 U.S. at 268.

record its "strong and unambiguous approval" of the sentence's appropriateness. *Id.* The D.C.

Circuit was therefore confident that, even if this Court were to resentence Tchibassa under

advisory Guidelines, it would not impose a materially more favorable sentence. *Id.* Accordingly,

Tchibassa could not show that his substantial rights had been affected by the *Booker* error, and

his claim failed. *Id.*

Notwithstanding the rejection of his claim on appeal, Tchibassa argues that an intervening

change in law has invalidated *Coles* and that now the *Booker* error should result in re-sentencing.

As the intervening change in law, Tchibassa cites the Supreme Court's recent line of decisions

elaborating on the post-*Booker* sentencing regime—*Rita v. United States*, 127 S. Ct. 2456

(2007); *Kimbrough v. United States*, 128 S. Ct. 558 (2007); *Gall v. United States*, 128 S. Ct. 586

(2007); *Spears v. United States*, 129 S. Ct. 840 (2009); and *Nelson v. United States*, 129 S. Ct.

840 (2009). Tchibassa asserts that these cases undercut the analytic framework of *Coles*, which

he says focuses excessively on "the rigid technical workings of the Guidelines," implicitly

ratifies "the trial court's operating presumption that the Guidelines range was reasonable," and

does not give primacy to the sentencing factors set forth in 18 U.S.C. § 3553(a). Def.'s Mem. of

P. & A. 6-12. In light of this new case law, Tchibassa contends that it is unclear what kind of

sentence the Court would now think appropriate, so a re-sentencing is warranted.

The Court disagrees with Tchibassa's analysis. First, the post-*Booker* line of decisions

does not invalidate *Coles*, which remains good law that binds this Court. Second, those

decisions would not apply to Tchibassa's case because they are not retroactively applicable.

**A. The Supreme Court's Post-*Booker* Line of Decisions Has Not Invalidated *Coles***

Tchibassa does not demonstrate that the *Rita/Kimbrough/Gall/Spears/Nelson* chain of

4

cases invalidates *Coles*. The government is correct when it states that:

> [W]hile these cases broadly address the same general topic as *Coles* does—federal sentencing after *Booker*—they do not involve the specific issue addressed in *Coles*: how the plain error standard of review is to be applied when a defendant was sentenced before *Booker* and failed to object to [the] then-accepted practice of treating the Guidelines as mandatory.

Govt.'s Opp'n Br. 15. The post-*Booker* line of decisions implicates the holding in *Coles* only

tangentially, and could hardly be said to overrule it.

Specifically, *Rita* held that an appellate court may apply a presumption of reasonableness

to a sentence that falls within the properly calculated Guidelines range. 127 S. Ct. at 2462.

Conversely, *Gall* held that appellate courts cannot apply a presumption of unreasonableness to

sentences that fall outside the Guidelines range; rather, all sentences are reviewed for abuse of

discretion and the sentencing judge must state reasons justifying the imposition of an unusually

harsh or lenient sentence. 128 S. Ct. at 594-95. *Kimbrough* clarified that the sentencing judge

has authority to depart from the Guidelines based on policy concerns—in that instance, the

discrepancy between penalties for crack cocaine and powder cocaine. 128 S. Ct. at 564. *Spears*

added to *Kimbrough* that the sentencing court may substitute its own categorical crack-powder

ratio in place of the ratio set forth in the Guidelines. 129 S. Ct. at 842-44. In *Nelson*, the

Supreme Court admonished that "our cases do not allow a sentencing court to presume that a

sentence within the applicable Guidelines range is reasonable." 129 S. Ct. at 892.

None of these cases directly impacts the *Coles* holding. Indeed, the D.C. Circuit applied

*Coles* as good law as recently as February 29, 2008—after *Rita*, *Kimbrough*, and *Gall* were

decided. *See United States v. Brown*, 516 F.3d 1047 (D.C. Cir. 2008). Certainly there has been

an intervening change in the general law of federal sentencing as the post-*Booker* sentencing

regime evolves, but not in any way that invalidates *Coles* and redounds to Tchibassa's benefit.

Acknowledging that "*Coles* has [not] been directly overruled, or struck down in its entirety," Tchibassa nonetheless argues that "the Court's reliance on the *Coles* standard to deny a sentencing remand in these particular circumstances is at odds with post-*Gall* Supreme Court doctrine." Def.'s Reply Br. 2. Tchibassa seeks not "the complete repudiation of *Coles,*" *id.* at 6, but recognition that *Coles* employs a now-obsolete methodology:

> [W]hat is no longer good law is the doctrine that, in circumstances such as those presented here, the Court of Appeals could *presume*—rather than having this Court determine for itself—that the district court would have come up with the same sentence that it did, if it applied the § 3553(a) factors rather than the Guidelines.

*Id.* (emphasis added).

Yet, *Coles* has never permitted the Court of Appeals to *presume* what the district court would do on a sentencing remand. Rather, *Coles* allows the Court of Appeals to forego a sentencing remand only in situations where the record makes clear the sentencing court's view of the matter. *Coles*, 403 F.3d at 769. In deciding Tchibassa's appeal, for example, the Court of Appeals hardly presumed what the district court might do in re-sentencing Tchibassa; rather, the Court of Appeals found that this Court had made clear on the record its "strong and unambiguous approval of the sentence imposed." *Tchibassa*, 452 F.3d at 930. In reaching its conclusion, the Court of Appeals paid careful attention to what this Court did and said:

> The district judge here sentenced Tchibassa at the very top of the applicable range—293 months—and identified this maximum permissible sentence as 'appropriate' to 'serve as a warning to those who will kidnap Americans abroad' and '*entirely appropriate* for the type of actions that occurred here in depriving [the hostage] not only of his freedom for two months, but basically of his life.' The judge's strong and unambiguous approval of the sentence imposed, based—as he explained—on its deterrent effect and its proportionality to the crime committed, makes us confident that were the judge given the opportunity to resentence

> Tchibassa, applying the Guidelines as advisory rather than mandatory, he would not impose a sentence materially more favorable than the one he made plain he considered 'appropriate.'

*Id.* (quoting sentencing transcript). Rather than presuming what would happen on remand, the Court of Appeals relied on manifest indications of what clearly would happen.

Because *Coles* has never stood for the proposition that the Court of Appeals could blithely presume what a district court would do on a sentencing remand, Tchibassa's attack on *Coles* misses the mark. The post-*Booker* line of decisions does not invalidate the *Coles* analysis.

### B. The Post-*Booker* Line of Decisions Is Not Retroactively Applicable

In addition to not upsetting *Coles*, the *Rita/Kimbrough/Gall/Spears/Nelson* chain does not apply to Tchibassa because those decisions are not applicable retroactively. All of them were decided after the Supreme Court denied Tchibassa's peitition for a writ of certiorari on March 19, 2007.[3] *See* 549 U.S. 1298 (2007). Tchibassa's conviction became final no later than that date. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (stating that in the context of post-conviction relief, "[f]inality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Accordingly, those decisions can only impact Tchibassa if they apply retroactively.

A decision is applicable retroactively if it states a new rule that is (1) substantive or (2) a "watershed" procedural rule. *In re Fashina*, 486 F.3d 1300, 1303 (D.C. Cir. 2007) (citing *Teague v. Lane*, 489 U.S. 288 (1989)). In *Fashina*, the D.C. Circuit ruled that *Booker* is not applicable retroactively because it satisfies neither of these prongs. 486 F.3d at 1304-06. *Rita*,

---

[3] The dates of decision are as follows: *Rita* – June 21, 2007; *Kimbrough* – Dec. 10, 2007; *Gall* – Dec. 10, 2007; *Spears* – Jan. 21, 2009; *Nelson* – Jan. 26, 2009.

*Kimbrough*, *Gall*, *Spears*, and *Nelson*—which merely elaborate on *Booker*—likewise create no new rules that are substantive or watershed procedural rules within the meaning of *Teague v. Lane*. Like *Booker*, then, those cases are not retroactively applicable. Thus, Tchibassa would not benefit from them.

Tchibassa contends, however, that the *Teague v. Lane* retroactivity analysis does not apply here. *See* Def.'s Reply Br. 7. Noting correctly that *Booker* applies to him because his case was on direct review at the time *Booker* was decided, *see supra* n.2, Tchibassa argues that the subsequent Supreme Court decisions merely elucidate the implementation of *Booker*. According to Tchibassa, such elucidation does not trigger the retroactivity analysis.

Seeing no legal authority for this bootstrapping argument, the Court rejects it. The chief case that Tchibassa cites in support of his position, *United States v. McKie*, 73 F.2d 1149 (D.C. Cir. 1996), is inapposite. In *McKie*, the D.C. Circuit held that "retroactive application of [judicial] interpretation of the *substantive* terms of a federal *statute*"—as distinct from "retroactive application of new *constitutional* rules of criminal *procedure*"—is compelled because "a court's interpretation of a substantive criminal statute generally declares what the statute meant from the date of its enactment, not from the date of decision." *Id.* at 1151 (emphasis in original). *McKie* thus directs retroactive application of substantive statutory decisions, but does not disturb the *Teague v. Lane* retroactivity analysis as it applies to new constitutional rules of criminal procedure.

In Tchibassa's case, the decisions at issue are not substantive statutory decisions of the type identified in *McKie*. Rather, *Booker* and its progeny are constitutional decisions about sentencing procedure, rooted in Sixth Amendment concerns. These cases have statutory

8

implications only insofar as *Booker* undertook remedial modification of sentencing statutes. Because *Booker* and its progeny are not substantive statutory decisions, the *Teague v. Lane* retroactivity analysis applies and blocks application of *Rita*, *Kimbrough*, *Gall*, *Spears*, and *Nelson* to Tchibassa.

## 2. Claim for Ineffective Assistance of Counsel with Respect to Sentencing

Because trial counsel did not object during sentencing to the Court's treatment of the Guidelines as mandatory, the D.C. Circuit reviewed the Court's reliance on the Guidelines only for plain error pursuant to FED. R. CRIM. P. 52(b). *Tchibassa*, 452 F.3d at 929 (citing *Coles*, 403 F.3d at 767). In view of this failure to object and the resulting unfavorable standard of appellate review, Tchibassa alleges that his trial counsel gave ineffective assistance. The Court cannot say that counsel performed deficiently, however, because *Booker* had not yet been decided at the time of Tchibassa's sentencing, and trial counsel cannot reasonably be expected to have anticipated that change in the law.

### A. Standard for Ineffective Assistance of Counsel

In analyzing a claim of ineffective assistance of counsel, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged," in particular "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland v. Washington*, 466 U.S. 668, 696 (1984). A claim for ineffective assistance of counsel must make a two-part showing:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

9

> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687. If one prong is not satisfied, a court need not examine the other. *Id.* at 697. In regards to deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" as measured against "prevailing professional norms" and "considering all the circumstances." *Id.* at 687-89. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### B. Defense Counsel's Performance Was Not Deficient

Tchibassa fails to show that the "prevailing professional norms" at the time of his sentencing included objecting to the mandatory Guidelines. To the contrary, the mandatory nature of the Guidelines had not yet been cast into doubt. The Court sentenced Tchibassa on February 27, 2004, eleven months prior to the release of the *Booker* decision on January 12, 2005. Moreover, the sentencing took place four months before the decision in *Blakely v. Washington*, 542 U.S. 296 (2004) (decided June 24, 2004), the chief precursor to *Booker*. *See Booker*, 543 U.S. at 226 (holding that "the Sixth Amendment as construed in *Blakely* does apply to the Sentencing Guidelines").

Failure to predict a change in the law does not generally render counsel's performance deficient. *See United States v. Williams*, 374 F. Supp. 2d 173, 175 (D.D.C. 2005) (collecting cases). The Guidelines were mandatory until the Supreme Court made them advisory with the *Booker* decision. Tchibassa's counsel cannot reasonably be expected to have foreseen that change in the law and objected at the time of sentencing:

10

> Until the decision in *Booker*, which was not decided until after [the defendant's] sentencing, the federal Sentencing Guidelines remained mandatory. Defense counsel's omission is not objectively unreasonable, as a result, because he cannot be faulted for failing to predict a change in constitutional criminal procedure.

*United States v. Buchanan*, No. 02-0085, 2007 WL 1748919, at *7 n.10 (D.D.C. June 18, 2007).

Because counsel did not perform deficiently, the Court denies Tchibassa's claim of ineffective assistance by trial counsel at sentencing, and does not reach the issue of prejudice.

### 3. Claim for Ineffective Assistance of Counsel with Respect to Speedy Trial Right

Tchibassa claims ineffective assistance by his trial and appellate counsels because they inadequately argued how the eleven-year delay between his indictment and trial prejudiced him, and therefore did not vindicate his Sixth Amendment right to a speedy trial. Before trial, counsel filed a motion to dismiss the indictment on speedy trial grounds, which the Court rejected after conducting an evidentiary hearing. On appeal, the D.C. Circuit recognized that the eleven-year interval was significant, but held that the delay did not violate Tchibassa's speedy trial right. *Tchibassa*, 452 F.3d at 922-27. Applying the above-discussed *Strickland* standard for ineffective assistance, the Court finds that Tchibassa's claim fails because he shows neither deficient performance nor resulting prejudice.

#### A. Appellate Ruling under the *Barker* Standard for Speedy Trial Claims

Speedy trial claims are considered using a four-factor balancing test. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). These four factors are the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* In Tchibassa's case, the Court of Appeals accepted that the length of the delay was "presumptively prejudicial" and triggered consideration of the other three *Barker* factors. *Tchibassa*, 452 F.3d at 924. Turning to

11

the second factor, the Court of Appeals found that "the fault for the delay in arrest lay primarily

with Tchibassa himself" because of his "continued residence in an area over which the United

States had no control and little influence." *Id*. at 925-26. The second factor therefore favored the

government. *Id*. at 926. The Court of Appeals ruled that the third factor also favored the

government, because Tchibassa knew since at least 1994 that charges were pending against him,

but did not assert his speedy trial right until April 21, 2003, nine months after his arrest. *Id*.

Finally, the Court of Appeals found under the fourth *Barker* factor that Tchibassa could make no

showing of "articulable prejudice," but instead relied solely on "presumptive prejudice," which is

inadequate. *Id*. at 927. The prejudice was merely presumptive because, although Tchibassa

claimed that "time compromised his ability to locate witnesses in West Africa who could confirm

Tchibassa's [innocuous] role" in the charged incident, he failed to identify any such witnesses or

show that he had even unsuccessfully attempted to contact them. *Id*. Finding that the second and

third factors favored the government while the fourth factor did nothing to favor Tchibassa, the

Court of Appeals held that the balance of the four *Barker* factors favored the government. *Id*.

### B. Tchibassa Shows Neither Deficient Performance Nor Prejudice

Tchibassa argues that the failure of trial and appellate counsels to show prejudice under

the fourth *Barker* factor amounts to ineffective assistance of counsel. A claim for ineffective

assistance must show both deficient performance and resulting prejudice to the defendant.

*Strickland*, 446 U.S. at 687. Because Tchibassa shows neither, the Court denies his claim.

As to demonstrating that trial and appellate counsels performed deficiently, Tchibassa

repeats the same shortcoming flagged by the Court of Appeals: he continues to fail to give any

indication that helpful "witnesses in West Africa" actually exist. Nor does Tchibassa even allege

12

that he identified such witnesses for his counsels to investigate, in which case he could at least

argue that counsels failed to follow up. Absent any such indications, the Court cannot say that

trial and appellate counsels performed deficiently, for it is impossible to know whether counsels

could have done what Tchibassa says they should have done.

Tchibassa also fails to show prejudice resulting from the allegedly deficient performance.

First, as already noted, it remains unproven to the Court whether helpful witnesses actually

existed. Even the best performance could not produce a witness who does not exist, so the Court

cannot find that Tchibassa was prejudiced by counsels' alleged deficiency. Secondly, Tchibassa

ignores that, even if he could make some more significant showing that the fourth *Barker* factor

favors him, the second and third factors still favor the government. As a result, it is not at all

clear that Tchibassa would achieve a different outcome under the *Barker* balancing test.[4]

### 4. Claim for 404(b) Evidentiary Rulings

Repeating his appellate claim, Tchibassa contends that the Court ruled wrongly under

FED. R. EVID. 404(b) in admitting the Dietrich testimony and excluding the Lietao testimony, in

violation of Tchibassa's Fifth and Sixth Amendment rights. The Dietrich testimony discussed "a

kidnaping of Polish workers several years after [the hostage's] release" while the Lietao

testimony would have shown "Tchibassa's beneficial role in resolving another kidnaping of

foreign workers." Def.'s Mem. of P. & A. 16-17. As Tchibassa acknowledges, the Court of

Appeals "reject[ed] Tchibassa's challenge because, assuming arguendo the district court erred,

---

[4] The Court of Appeals has already dismissed as inconsequential Tchibassa's
contentions, even if true, about the passage of time making him unable to recall the identities of
certain people. *See Tchibassa*, 452 F.3d at 927 n.10. Accordingly, no cognizable prejudice
could have resulted from any deficient performance by counsels as to those contentions.

the error was harmless" in light of the ample other evidence of Tchibassa's complicity in the hostage-taking. *Tchibassa*, 452 F.3d at 928.  Nonetheless, he "continues to assert that these evidentiary rulings could not be deemed 'harmless' because they went to the heart of his position at trial" that his participation in the hostage situation was innocent. Def.'s Mem. of P. & A. 17.

"Claims already raised and rejected on direct review will not be entertained on a § 2255 motion absent extraordinary circumstances such as an intervening change in the law." *United States v. Stover*, 576 F. Supp. 2d 134, 141 (D.D.C. 2008) (citations omitted).  In an apparent attempt to show intervening case law that justifies a different outcome on his § 2255 motion, Tchibassa cites *Crawford v. Washington*, 541 U.S. 36 (2004), as "emerging case law" that implicates his situation. Def.'s Mem. of P. & A. 17.  Yet, *Crawford* was decided on March 8, 2004—three days before Tchibassa even filed his notice of appeal.  It is unclear how *Crawford* could possibly be considered intervening case law with respect to the Circuit's decision and this § 2255 Motion.  Accordingly, the Court finds that Tchibassa's claim is procedurally barred.

## CONCLUSION

The Court will deny Tchibassa's § 2255 Motion in its entirety based on several determinations.  First, the post-*Booker* line of Supreme Court decisions does not justify a reconsideration of the D.C. Circuit's ruling denying Tchibassa a sentencing remand on the grounds that he suffered no prejudice from the Court's treatment of the Guidelines as mandatory. Second, Tchibassa fails to show that his trial attorney performed deficiently in not objecting to treatment of the Guidelines as mandatory.  Third, Tchibassa demonstrates neither deficient performance nor prejudice by his trial and appellate counsels in relation to his speedy trial rights. Finally, there is no basis to disturb the D.C. Circuit's rejection of Tchibassa's claim of improper

14

evidentiary rulings.

An order accompanies this Memorandum Opinion.

August 21, 2009

Thomas F. Hogan
United States District Judge